**R.R. DONNELLEY & SONS, COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 96–784C.

United States Court of Federal Claims.

July 28, 1997.

Frederic G. Antoun, Jr., Chambersburg, PA, for plaintiff.

Steven E. Gordon, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Kerry L. Miller, U.S. Government Printing Office, of counsel.

## ORDER

MILLER, Judge.

This case is before the court after argument on defendant's motion to dismiss Count II of plaintiff's complaint for lack of subject matter jurisdiction and for summary judgment on Count I. Plaintiff claims that the Government's cancellation of an Invitation for Bids relating to the printing of United States patents was arbitrary and capricious, thus entitling plaintiff to bid preparation and related costs. The issues are 1) whether Count II of plaintiff's complaint is a promissory estoppel or an equitable estoppel claim, and 2) whether plaintiff has raised a genuine issue of material fact demonstrating that the Government acted in an arbitrary and capricious manner when it canceled the Invitation for Bids.

## FACTS

The instant dispute arose from a solicitation for the printing of patents issued by the Government Printing Office (the "GPO") on November 15, 1993.[1] The solicitation, issued in the form of an Invitation for Bids ("IFB"), called for a one-year requirements contract. According to defendant, the IFB estimated that the Government would require approximately 35,270,000 leaves over the 12–month term of the contract, or about 2,939,000 leaves per month. Plaintiff disagrees, arguing that the IFB contemplated that the Government would require approximately 46,772,273 leaves over the course of the contract, or about 3,897,689 leaves per month.[2] In addition, defendant contends that the IFB contained a pricing schedule contemplating that the GPO would order at least 45 copies of each patent and calling for a line item price for the first 45 copies. Plaintiff, while agreeing that the IFB contained a pricing schedule calling for a line item price for the first 45 copies, suggests that the IFB is not clear concerning the minimum number of copies for each patent.

On December 13, 1993, the GPO received two bids, one from R.R. Donnelley & Sons, Company ("plaintiff" or "Donnelley"), in the amount of $2,887,812.39 and one from GraphicData, Inc. ("GraphicData"), the incumbent Program D306S contractor, in the amount of $2,933,925.23. Soon thereafter, the contracting officer ordered a full pre-award survey and began evaluating whether plaintiff possessed the financial and technical resources to perform the contract.

On December 27, 1993, GraphicData filed a pre-award protest with the contracting officer. GraphicData alleged that 1) plaintiff's bid was not signed by an authorized official and therefore was not responsive, and 2) plaintiff lacked the necessary facilities to perform the contract. The contracting officer ultimately dismissed the protest.

A government pre-award survey team, consisting of three GPO employees and three employees of the Patent and Trademark Office (the "PTO"), conducted an on-site survey of plaintiff's facility on January 12, 1994. According to plaintiff, Larry McHugh, one of

---

1. The GPO contracts with private parties in order to meet the requirements of the Patent and Trademark Office (the "PTO"). The printing of U.S. Patents is known as Program D306S.

2. A leave is one sheet of 8 1/2 inch by 11 inch paper.

the GPO representatives, told Llewellyn Dortch, a Donnelley employee responsible for preparing plaintiff's bid for the Program D306S contract, that "he [Mr. McHugh] saw no reason why Donnelley would not be certified to receive [the] award, assuming that several questions were addressed, and our various plans were modified to reflect changes we made since their original submission." Affidavit of Llewellyn Dortch, May 12, 1997, ¶ 9. Mr. Dortch also contends that Mr. McHugh and the PTO representatives instructed plaintiff to complete all arrangements necessary for performing the contract within the next 20–30 days. *Id.* ¶ 10.

On January 13, 1994, GraphicData filed a pre-award bid protest with the General Accounting Office (the "GAO") challenging plaintiff's responsiveness and its ability to perform the contract. GraphicData later filed three additional protests with the GAO. Both the GPO and plaintiff filed pleadings with the GAO urging the dismissal of GraphicData's protests. The GPO wrote to plaintiff informing plaintiff that it could not make an award under the solicitation until the GAO ruled on GraphicData's protests. On January 28, 1994, the GPO's pre-award survey team recommended to the contracting officer that the GPO award the Program D306S contract to plaintiff.

By memorandum dated March 6, 1994, the PTO advised the GPO that it would be substituting CD–ROM patent documents for paper and microfilm patent documents. On March 8, 1994, representatives of the PTO met with the GPO's contracting officer to discuss how the conversion to CD–Rom documents would affect the PTO's paper document requirements. A March 15, 1994 memorandum from Richard Weiss, the GPO contracting officer, to the GPO Contract Review Board, predicted that the conversion to CD–ROM would result in the reduction of 12 paper patent sets. Mr. Weiss opined that

[t]he initial reduction of the 12 sets would result in an immediate reduction of approximately 20% in the soft copy work load. This reduction would directly [a]ffect the printing line items, the collating line items (if a charge were entered), and result in a significant drop in the paper to

be used. Further reductions would result in a workload drop in excess of 50% over what was originally estimated.

Plaintiff strenuously disagrees with Contracting Officer Weiss' predictions and argues that the contracting officer did not have a reasonable basis for predicting a 20–50% reduction in paper patent documents, pointing to the correspondence, internal memoranda, and other documents in the record to support plaintiff's points.

On March 15, 1994, Kerry Miller, counsel for the GPO, informed plaintiff that the GPO planned to cancel the solicitation for Program D306S because the conversion to CD–ROM would cause a 25% reduction in the PTO's paper requirements. The GPO formally canceled the November 15, 1993 solicitation on March 22, 1994, citing "extensive changes in the estimated requirements" as the reason for cancellation.

The GPO issued a revised solicitation for the Program D306S contract on April 11, 1994. The revised solicitation provided, in pertinent part:

NOTICE TO CONTRACTORS All contractors planning to bid on this solicitation are put on notice that beginning October 1, 1994 the Patent and Trademark Office will be offering to supply U.S. Patents sets to their customers on CD–ROM rather than on paper. The basis of award figures offered in this solicitation were compiled utilizing two time periods. . . .

At this time it is unknown EXACTLY how many customers will request the change-over to CD–ROM, but based on the Patent Office's knowledge of their customers present capabilities, they anticipate that as many as 25 customers now receiving paper sets will switch to CD–ROM. The basis of award figures compiled for the second time period reflects the 25 set drop.

Only one company, GraphicData, bid on the revised solicitation. The GPO awarded the revised Program D306S contract to GraphicData on May 20, 1994.

On July 6, 1994, plaintiff submitted a claim to Contracting Officer Weiss contending that the GPO had breached its duty to deal fairly

with plaintiff when it canceled the solicitation. Plaintiff sought reimbursement in the amount of $336,673.37 for costs incurred in "bid preparation; formulation and implementation of quality, security and production plans; pre-award survey and provision of necessary information to GPO to respond to various protests and preparation to perform the contract; facilities acquisition cost and expenses; [and] legal expenses." Mr. Weiss responded to plaintiff's claim on April 24, 1995. He explained that he did not have jurisdiction to enter a final decision on plaintiff's claim.

Plaintiff filed suit in the Court of Federal Claims on December 16, 1996. Plaintiff's complaint contained two counts, breach of implied contract (Count I) and equitable estoppel (Count II). Plaintiff seeks $310,957.01 in monetary damages and an award of attorney's fees and other costs.

## DISCUSSION

### I. *Defendant's motion to dismiss Count II of the complaint*

Defendant argues that Count II of the complaint, although captioned as an equitable estoppel claim, actually is a promissory estoppel claim. Whether Count II of plaintiff's complaint is an equitable estoppel claim or a promissory estoppel claim is significant, for the United States " 'has not waived its sovereign immunity with regard to a promissory estoppel cause of action.' " *Biagioli v. United States*, 2 Cl.Ct. 304, 308 (1983) (quoting *Jablon v. United States*, 657 F.2d 1064, 1070 (9th Cir.1981)); *see Knaub v. United States*, 22 Cl.Ct. 268, 276 (1991); *American Maritime Transp., Inc. v. United States*, 18 Cl.Ct. 283, 292 (1989).

 Promissory estoppel is " 'used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute.' " *Biagioli*, 2 Cl.Ct. at 307 (quoting *Jablon*, 657 F.2d at 1068). Promis-

sory estoppel functions as a sword, while equitable estoppel functions as a shield. *Biagioli*, 2 Cl.Ct. at 307. Count II of plaintiff's complaint states that plaintiff is entitled to monetary damages because the GPO induced plaintiff to expend funds on a contract that had not yet been awarded and plaintiff relied on the GPO's representations. Complaint filed Dec. 16, 1996, ¶¶ 35–39. Through Count II of its complaint, plaintiff attempts to create a cause of action.[3] Consequently, the court dismisses Count II for lack of subject matter jurisdiction.

### II. *Defendant's motion for summary judgment*

#### 1. *Standard of review*

 Expenses incurred when preparing a bid for a government contract normally are "lost" when the bidder does not receive the contract. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 447 (Fed.Cir.1996). Where, however, the Government's consideration of the disappointed bidder's proposal was arbitrary or capricious, the disappointed bidder may recover the costs of preparing its unsuccessful bid. *Id.* "The standards that permit a disappointed bidder to recover proposal preparation expenses are high and the burden of proof is heavy." *Id.* (quoting *Lincoln Servs., Ltd. v. United States*, 230 Ct.Cl. 416, 417–18, 678 F.2d 157, 158 (1982), and citing *CACI, Inc.–Fed. v. United States*, 719 F.2d 1567, 1573 (Fed.Cir.1983); *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir. 1983)); *see United States Fidelity & Guar. Co. v. United States*, 230 Ct.Cl. 355, 366, 676 F.2d 622, 630 (1982).

Defendant contends that plaintiff must prove the arbitrary and capricious nature of the Government's actions by "clear and convincing evidence." In support of imposing an elevated standard of proof, plaintiff cites *Shields Enterprises, Inc. v. United States*, 28 Fed.Cl. 615, 622 (1993). This court respectfully disagrees with *Shields'* interpretation of the binding precedent. As discussed above, the Federal Circuit and its predeces-

---

**3.** Plaintiff apparently acknowledges that the court does not have jurisdiction over count II of its complaint: "Plaintiff concedes that, in the event it fails to make out a claim for bid prepara-

tion costs under the *Keco II* standards, Plaintiff's 'estoppel' theory may not be sufficient, in and of itself, to create a cause of action." Plf's Br. filed May 22, 1997, at 7.

sor, the United States Court of Claims, have defined the standard of proof as "high," not as "clear and convincing."[4] *See E.W. Bliss Co.*, 77 F.3d at 445; *Lincoln Servs., Ltd.*, 230 Ct.Cl. at 417–18, 678 F.2d at 158; *Excavation Constr., Inc. v. United States*, 204 Ct.Cl. 299, 302, 494 F.2d 1289, 1290 (1974).

■ In *Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200 (1974), the Court of Claims set forth four "criteria" used in determining whether an agency's action is arbitrary and capricious:

One is that subjective bad faith on the part of the procuring officials, depriving a bidder of the fair and honest consideration of his proposal, normally warrants recovery of bid preparation costs.[5] A second is that proof that there was "no reasonable basis" for the administrative decision will also suffice, at least in many situations. The third is that the degree of proof of error necessary for recovery is ordinarily related to the amount of discretion entrusted to the procurement officials by applicable statutes and regulations. The fourth is that proven violation of pertinent statutes or regulations can, but need not necessarily, be a ground for recovery. The application of these four general principles may well depend on (1) the type of error or dereliction committed by the Government, and (2) whether the error or dereliction occurred with respect to the claimant's own bid or that of a competitor.

*Id.* at 574, 492 F.2d at 1204 (citations omitted). Plaintiff does not contend that the

contracting officer canceled the IFB in bad faith or in violation of an applicable regulation. Rather, the reasonableness of the decision is questioned.

■ In order to establish that government action was arbitrary and capricious, a disappointed bidder need not prove that each of the four *Keco* factors is present. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988). To the extent that *Contract Custom Drapery Serv. v. United States*, 6 Cl.Ct. 811, 818 (1984), holds that "[o]nly a bad faith rejection of all bids or cancellation of the solicitation may give rise to a right to recover bid preparation costs[,]" the Federal Circuit's decision in *Prineville* is to the contrary: "[T]he absence of any allegation or evidence of bad faith . . . is not determinative." 859 F.2d at 911 n. 5.

■ The third *Keco* factor, the "amount of discretion possessed by the procurement official," is not so much an independent element as an analytical tool for determining "the degree of proof necessary to prove arbitrary and capricious conduct." *United States Fidelity & Guar. Co.*, 230 Ct.Cl. at 369, 676 F.2d at 630; *Lincoln Servs., Ltd.*, 230 Ct.Cl. at 427, 678 F.2d at 163–64. The more discretion that a procurement official possesses, the harder it is for a disappointed bidder to prove that the official's actions are arbitrary and capricious. *Burroughs Corp. v. United States*, 223 Ct.Cl. 53, 65, 617 F.2d 590, 597 (1980). In a negotiated procurement, procurement officials possess a high degree of

---

4. *See infra* note 5.

5. In *Heyer Prod. Co. v. United States*, 135 Ct.Cl. 63, 71, 140 F.Supp. 409, 414 (1956), the Court of Claims did apply the clear and convincing standard of proof:

Recovery can be had in only those cases where it can be shown by clear and convincing proof that there has been a fraudulent inducement for bids, with the intention, before the bids were invited or later conceived, to disregard them all except the ones from bidders to one of whom it was intended to let the contract, whether he was the lowest responsible bidder or not.

*Heyer*, which was decided before *Keco*, dealt exclusively with the question of whether the Government had induced bids in bad faith. A finding that the Government acted in bad faith

requires " 'well-nigh irrefragable proof,' " *Kalvar Corp. v. United States*, 211 Ct.Cl. 192, 198, 543 F.2d 1298, 1301–02 (1976) (citation omitted), and, therefore, the clear and convincing standard is appropriate. However, no direct authority supports the proposition that the clear and convincing standard applicable to claims of bad faith conduct applies to the other *Keco* factors, unreasonableness and violations of applicable statutes and regulations. The court notes that the Court of Claims in *Burroughs Corp. v. United States*, 223 Ct.Cl. 53, 65, 617 F.2d 590, 597 (1980), described the without-any-reasonable-basis test as "closely related" to the bad-faith test. However, *Burroughs* did not suggest that the types of proof are the same. The Federal Circuit's decision in *Prineville Sawmill Co. v. United States*, 859 F.2d 905 (Fed.Cir.1988), *see infra*, would appear to take issue with *Burroughs*, in any event.

discretion in their efforts to obtain a contract most beneficial to the Government. *Id.* at 65, 617 F.2d at 597. In a formal procurement, such as this case, however, procurement officials require less discretion to perform their duties. *Id.*

GPO Printing Procurement Regulation ch. XI, § 2(1)(a) (undated), provides:

> Preservation of the integrity of the competitive bid system and prevention of unnecessary exposure of bid prices dictate that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid. unless there is a *compelling reason* to reject all bids and cancel the invitation. Wherever possible, changes in requirements shall be made prior to bid opening.

(Emphasis added.) Consequently, the contracting officer's discretion to cancel a solicitation after bid opening is limited to those circumstances where "compelling reasons" exist.

### 2. *Summary judgment standard*

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Seal–Flex, Inc. v. Athletic Track and Court Const.,* 98 F.3d 1318, 1321 (Fed.Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). The moving party bears the initial burden of establishing the absence of any disputes of material fact. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." *Id.*

When resolving a motion for summary judgment, the court cannot weigh the evidence and determine the truth of the matter.

*Anderson,* 477 U.S. at 249, 255, 106 S.Ct. at 2510–11, 2513–14. Any evidence presented by the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513–14. Accordingly, in its capacity as the opponent of summary judgment, plaintiff is entitled to "all applicable presumptions, inferences, and intendments." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984).

### 3. *Reasonableness of the cancellation*

■ Defendant argues that once the contracting officer learned from the PTO that the latter predicted a 20% reduction in its paper patent requirements, the contracting officer had a reasonable basis for canceling the IFB. In support of its position, defendant cites GPO Printing Procurement Regulation ch. XI, § 2(b), which provides, in pertinent part:

> IFBs may be canceled after opening but prior to award and all bids rejected, only where such action is clearly in the best interest of the Government.... The following are examples of circumstances which may justify cancellation of an IFB after opening:
>
> (ii) The supplies or services are no longer required.
>
> ....
>
> (vii) For other reasons cancellation is clearly in the Government's interest.

Defendant posits that, at the time of the cancellation, the contracting officer reasonably believed that the 20% reduction in the PTO's paper patent requirements would cause the GPO to purchase supplies it did not require and, in addition, potentially could expose the GPO to a claim for negligent estimates of its requirements.

Plaintiff does not dispute that a predicted 20% reduction in the PTO's paper patent requirements would justify the cancellation of the IFB. However, plaintiff challenges the reasonableness of the contracting officer's prediction that a 20% reduction would occur.[6]

---

**6.** Plaintiff makes two additional arguments. First, plaintiff argues that the PTO was considering converting to CD–ROM technology earlier than March 1994, and that the GPO therefore should have canceled the solicitation at an earli-

er date. Plaintiff's argument requires too much of the contracting officer. Although certain PTO employees, who were not involved in the procurement of the Program D306S contract, were contemplating a conversion to CD–ROM technol-

According to plaintiff, the contracting officer, given the information available to him at the time of the cancellation of the IFB, should have predicted a 5% reduction in the PTO's paper patent requirements, not a 20% reduction. If a reasonable evaluation of the available information would have suggested only a 5% reduction in the PTO's paper patent requirements, plaintiff contends that the contracting officer's decision to cancel the IFB lacked a reasonable basis.

Based on the correspondence, internal memoranda, and other documents included in the record, plaintiff has raised a genuine issue of material fact concerning the reasonableness of the contracting officer's determination that implementation of the CD–ROM technology would cause a 20% reduction in the PTO's paper patent requirements. The court is left with two competing interpretations of the evidence. In resolving defendant's motion for summary judgment, the court cannot determine which party's interpretation is more credible. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Trial is required to determine whether the contracting officer had a reasonable basis, given the information available to him on March·22, 1994, for predicting that the PTO's paper patent requirements would decrease by 20%.

During oral argument, defendant expressed concern that a trial on the merits would be tantamount to a judicial second-guessing of the contracting officer's decision. The court is well aware of its limited role in reviewing an agency action under the arbitrary and capricious standard. Trial will focus on the question of whether the contracting officer had a reasonable basis for his decision.

ogy prior to March, 1994, the Commissioner of Patents and Trademarks did not institute the CD–ROM conversion program until March 16, 1994. "GPO Contracting Officers have many important responsibilities, but trying to predict the future management actions of another agency with respect to its contracts is not one of them, and it would be foolish for them to try to do so." *In the Matter of the Appeal of GraphicData, Inc.,* No. 35–94, 1996 WL 812875, at * 39 (G.P.O.B.C.A. June 14, 1996).

Second, plaintiff argues that the actual reduction in the PTO's paper patent requirement was less than predicted in March 1994, thus proving

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion is granted in part, insofar as Count II of the complaint is dismissed for lack of jurisdiction, and is otherwise denied.

2. All discovery shall be completed by November 3, 1997.

3. The submissions required by ¶¶ 12, 13, and 15 of Appendix G shall be filed by November 25, 1997.

4. The pretrial conference shall be held at 2:00 p.m. on Tuesday, December 2, 1997, in the National Courts Building, 717 Madison Place, N.W., Washington, DC.

5. Trial, not to exceed 5 days, shall commence at 10:00 a.m. on Monday, December 8, 1997, in the National Courts Building.

that the contracting officer's prediction lacked a reasonable basis. The fact that the contracting officer's prediction did not come to fruition does not prove that the original prediction was unreasonable. As the Court of Claims explained in *Womack v. United States,* 182 Ct.Cl. 399, 412–13, 389 F.2d 793, 801 (1968), "in promulgating an estimate for bidding-invitation purposes, the Government is not required to be clairvoyant but is obliged to base that estimate on all relevant information that is reasonably available to it." The proper focus of the court's inquiry is on the knowledge possessed by the contracting officer at the time he canceled the solicitation.