**BIRCH & DAVIS INTERNATIONAL, INC., Appellant,**

v.

**Warren M. CHRISTOPHER, Secretary of State, Appellee.**

No. 92–1384.

United States Court of Appeals, Federal Circuit.

Sept. 13, 1993.

---

Shelton H. Skolnick, of Derwood, MD, argued for appellant. With him on the brief was Judy D. Leishman, of Glenelg, MD, of counsel.

Christopher R. Yukins, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Terrence S. Hartman, Asst. Director. Of counsel was James M. Kinsella. Also on the brief was Jeffrey Marburg–Goodman, U.S. Agency for Intern. Development, Washington, DC, of counsel.

Before PLAGER, Circuit Judge, SMITH, Senior Circuit Judge, and RADER, Circuit Judge.

PLAGER, Circuit Judge.

Appellant, Birch & Davis International, Inc. (Birch), protested a procurement conducted by the Agency for International Development (agency). Although four bids, including two from Birch, were technically acceptable, the contracting officer excluded all but one bid from the initial competitive range. Both Birch bids were excluded.

■ When Birch challenged this action before the General Services Administration Board of Contract Appeals (Board), the Board held the contracting officer's decision to be reasonable and within her discretion. Birch appealed the Board's decision here. We conclude that the Competition in Contracting Act (CICA) and the Federal Acquisition Regulations (FAR) implementing it do not allow a contracting officer to eliminate competitors from the initial competitive range if there is any reasonable chance that they will be selected. The decision of the Board is vacated and the case remanded for proceedings consistent with this opinion.

## BACKGROUND AND PROCEDURAL HISTORY

On April 1, 1991 the Agency for International Development issued a Request for Proposals (RFP) for the design and implementation of a computerized management information system for the Egyptian Health Insurance Organization. The proposals were to be evaluated for technical merit factors, worth a combined total of 90 points, and a cost factor, worth 10 points.

Birch submitted three proposals, while four other companies submitted one each. A technical evaluation panel scored the seven bids and deemed four to be technically acceptable. Two of these four were from Birch, leaving three competitors in the bidding. Although Birch's technical scores were the lowest of the four bids—10.8 and 12 points behind the highest score—all four of the technically acceptable proposals had numerous deficiencies. Even the highest-scoring bid, from Maximus, scored only 67.5 out of 90 possible points. After the contracting officer factored in the cost evaluations, Maximus' lead over Birch increased to 15.01 and 15.94 points. Maximus' total score was 77.05 out of 100 possible points.

On December 10, 1991 the contracting officer informed Birch and another bidder that their proposals had been excluded from the initial competitive range. See FAR, 48 C.F.R. § 15.609(a) (1991). This action left Maximus as the sole offeror in range. Because a contracting officer need not conduct discussions with offerors outside the competitive range, see id. § 15.610(b), the contracting officer held discussions with Maximus only.

On December 20, 1991 Birch filed a protest with the Board of Contract Appeals (Board), contending that the contracting officer had improperly excluded Birch's bids from the competitive range. The protest also alleged generally that the technical and cost evaluations were fatally flawed.

In its decision on February 27, 1992, the Board found no error in the calculation of technical and cost scores. *Birch & Davis Int'l, Inc. v. Agency for Int'l Dev.*, 92–2 B.C.A. (CCH) ¶ 24,881 at 124,097–98, 1992 WL 45953 (GSBCA 1992). The Board acknowledged the broad discretion of contracting officers to determine competitive range, but gave "close scrutiny" to the contracting officer's decision in this case because it restricted the competitive range to a single proposal. Using this close scrutiny, the Board concluded that the contracting officer's action was reasonable. *Id.* at 124,098. The Board stated that:

[T]he record ... reflects a thorough and conscientious effort on the part of the TEP [technical evaluation panel] members. The contracting officer has obviously relied heavily upon it. Protester [Birch] has provided us with no evidence which would cause us to doubt the accuracy of the TEP findings or the contracting officer's reasonable reliance upon it.

We recognize, as did the contracting officer herself, that many of the deficiencies found in protester's three proposals are obviously of an informational nature and might have been readily remedied through discussions with protester. The same, however, can be said of the deficiencies noted in the other proposals as well—none of which were particularly close to obtaining the highest possible overall score in the initial evaluation. Comments contained in the TEP report ... strongly suggest that, with discussions, the scores of all offerors might significantly improve.... Since the potential for improvement of scores appears to have existed for all offers, the point spread apparent in the initial evaluation was of particular importance and apparently was a significant factor in the contracting officer's decision not to include protester's offers in the competitive range.

. . . .

We see no reason to take issue with the contracting officer's determination in this case. The record shows that this decision was not made hastily or without consultation.

. . . .

Whether we agree or disagree with her final decision is immaterial. The test is whether it was a reasonable decision made within the limits of her assigned discretion. *Id.* at 124,098–99.

On March 4, 1992 Birch moved for reconsideration of the Board's decision, on the ground that it failed to address an issue raised in the protest. Birch had argued that the agency, by not seeking full and open competition, violated the Competition in Contracting Act. In its denial of reconsideration on May 6, 1992, the Board rejected Birch's argument because it was based on the erroneous assumption that the contracting officer's decision was improper. *Birch & Davis Int'l, Inc. v. Agency for Int'l Dev.*, 92–3 B.C.A. (CCH) ¶ 25,082 at 125,020, 1992 WL 94529 (GSBCA 1992). The Board in its earlier decision had already held that the contracting officer's decision was proper.

On March 5, 1992 Birch also moved for consideration by the full Board, claiming that the decision in this case conflicted with prior Board decisions. In its denial on May 6, 1992, 1992 WL 94524, the Board found no conflict; its conclusion that the contracting officer's decision was reasonable turned on specific facts unique to this case. *Id.* at 125,021. Birch appealed the Board's decision to this court.

Birch argues that the contracting officer's exclusion of Birch from the competitive range violated FAR, 48 C.F.R. § 15.609(a), which requires that the competitive range "include all proposals that have a reasonable chance of being selected for award. When there is doubt as to whether a proposal is in the competitive range, the proposal should be included." Birch contends that the score difference between Birch and Maximus was not insurmountable, especially since Maximus' bid scored far below the maximum possible score of 100. Birch's bids were techni-

cally acceptable, and contained mainly informational deficiencies that could easily be corrected after discussions. Thus, says Birch, its proposals had "a reasonable chance of being selected."

Birch also argues that the contracting officer's action violated the full and open competition requirement of CICA, 41 U.S.C. § 253 (1988), because it resulted in a competitive range of only one proposal. The Comptroller General has opined that when the exclusion of an informationally deficient proposal would result in a competitive range of one, the agency should retain the offer in range unless it is so deficient that further discussions with the offeror would be meaningless. *Falcon Sys., Inc.*, 84–1 Comp.Gen.Dec. ¶ 658, at 8 (June 22, 1984).

In response, appellee Secretary of State (government) argues that substantial evidence supports the Board's conclusion that the contracting officer acted reasonably and within her discretion. A contracting officer has broad discretion to determine the initial competitive range; in this case, the contracting officer simply determined that Birch's proposals scored so far behind Maximus' that they had no reasonable chance of being selected. Even if the competitive range consists of one proposal, says the government, the contracting officer's action should not be disturbed unless unreasonable. Although close scrutiny is unnecessary, in this case the Board applied close scrutiny yet still decided that the contracting officer acted reasonably.

The government also argues that eliminating bidders before holding discussions with them is proper because an agency may award a contract without conducting any negotiations at all. *See* 41 U.S.C. § 253b(d)(1)(B) (1988). According to the government, requiring an agency to retain multiple offerers in the competitive range purely for discussion purposes would result in costly iterations of discussions, offers, and competitive range redeterminations.

## DISCUSSION

■ A contracting officer has broad discretion in determining competitive range, and such decisions are not disturbed unless clearly unreasonable. *RMTC Sys., Inc.*, 92–1 B.C.A. (CCH) ¶ 24,619 at 122,800, 1991 WL 256083 (GSBCA 1991); *Integrated Sys. Group, Inc.*, 91–2 B.C.A. (CCH) ¶ 23,961 at 119,956, 1991 WL 71525 (GSBCA 1991); *Phoenix Assoc., Inc.*, 88–1 B.C.A. (CCH) ¶ 20,455 at 103,451 (GSBCA 1988). However, the FAR does not allow a contracting officer to eliminate competitors from the initial competitive range if there is any "reasonable chance" that they will be selected. FAR § 15.609(a) provides:

> The contracting officer shall determine which proposals are in the competitive range for the purpose of conducting written or oral discussion.... The competitive range ... shall include all proposals that have a reasonable chance of being selected for award. When there is doubt as to whether a proposal is in the competitive range, the proposal should be included.

*See Blue Chip Computers Co.*, 92–1 B.C.A. (CCH) ¶ 24,498 at 122,686, 1991 WL 192292 (GSBCA 1991) (protester's proposal was technically acceptable and was only deficient with regard to cost itemization; here Air Force violated FAR § 15.609 by excluding the proposal from the competitive range when it was reasonably susceptible of being made acceptable).

There is thus a tension between the necessarily broad discretion of an agency, acting through the contracting officer, to determine what bids are realistically competitive, and the mandate of the FAR that, when there is doubt, the questionable bid should be included. The question posed by the FAR, consistent with the full and open competition requirement of CICA,[1] is not whether a reason-

---

1. The particular provision at issue states that "an executive agency in conducting a procurement for property or services—(A) shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this subchapter and the modifications to regulations." 41 U.S.C. § 253(a)(1) (1988). There are a few exceptions to this general requirement of competition, but these are limited to specific, well-defined situations. *See id.* § 253(c). "The Competition Act thus was designed to obtain 'full and open competition' by providing that (1) contractors were given adequate opportunities to bid, and (2) the government received sufficient

able contracting officer might under the circumstances prefer a competitive range of one, but whether the excluded competitors have a reasonable *chance* of being selected after opportunity for improvement. *See also CACI, Inc.–Federal v. United States,* 719 F.2d 1567, 1571 (Fed.Cir.1983).

To promote the legislative and regulatory policy favoring competition while allowing contracting officers the full range of their discretion, the Board of Contract Appeals and the Comptroller General have given "close scrutiny" to contracting officer evaluations that result in a competitive range of one. *Rockwell Int'l Corp. v. United States,* 4 Cl.Ct. 1, 5 (1983); *Aerospace Design,* 92–2 Comp.Gen.Dec. ¶ 11, p. 11 (July 9, 1992); *Apt Corp.,* 88–1 B.C.A. (CCH) ¶ 20,411 at 103,249 (GSBCA 1987).

▮ We agree with this approach. If the contracting officer has determined an initial competitive range of one, there must be a clear showing that the excluded bids have "no reasonable chance" of being selected. FAR § 15.609; *c.f. American Sys. Corp.,* 92–2 Comp.Gen.Dec. ¶ 158 (Sept. 8, 1992) (technically acceptable proposal could be excluded from competitive range, leaving one offeror in range, because it had no reasonable chance of being selected); *Apt Corp.,* 88–1 B.C.A. (CCH) at 103,249.

When there is doubt as to whether a proposal belongs in the competitive range, FAR § 15.609 requires that it be included. "It is well established that a proposal must generally be considered to be within the competitive range unless it is so technically inferior or out of line as to price, as to render discussions meaningless." *M.W. Kellogg Co./Siciliana Appalti Costruzioni, S.p.A. v. United States,* 10 Cl.Ct. 17, 23 (1986); *Falcon Sys., Inc.,* 84–1 Comp.Gen.Dec. ¶ 658, p. 8; *see also Denro, Inc. v. Department of Transp.,* 93–1 B.C.A. (CCH) ¶ 25,315 at 126,128 1992 WL 182226 (GSBCA 1992).

▮ Here, the Board stated that it applied "close scrutiny." However, the record does not provide us with an adequate basis upon which to determine whether the Board correctly judged that the contracting officer acted within her discretion. The Board cited her reasonable reliance on the technical evaluations, and the fact that she made her decision without haste and after consultation. Thus, its approval of the contracting officer's decision appears to be based merely on the officer's decisional process. The Board made no finding regarding Birch's reasonable chances of being selected for award.

In fact, the Board's findings on that subject might suggest the opposite. The Board found that many of Birch's deficiencies were informational and might be readily corrected. The Board also acknowledged that none of the proposals were close to obtaining the highest possible total score. The Board stated that the initial score difference between Birch's and Maximus' bids was "of particular importance," but never explicitly concluded that Birch's proposal was so deficient that Birch could not overcome the score difference after discussions.

We recognize that under 41 U.S.C. § 253b(d)(1)(B) the government may award a contract on the basis of original submissions, without any negotiations. However, that is different from the situation in which the government makes an award on the basis of original bids when the awardee's proposal has sufficient problems that extensive discussions are necessary to remedy them—discussions which, if conducted with the other competitors, might improve their proposals also to the point where they would have a reasonable chance of being selected.

On the record before us there is an absence of substantial evidence to support the conclusion that Birch had no "reasonable chance" of success. We thus are unable to affirm the Board.

## CONCLUSION

The decision of the Board is vacated. The matter is remanded to the Board for such proceedings as may be necessary consistent with this opinion.

bids to insure that it obtained the lowest possible price." *United States v. Thorson Co.,* 806 F.2d 1061, 1064 (Fed.Cir.1986); *see* House Rep. No. 1157, 98th Cong., 2d Sess. 17 (1984).

Costs

Costs awarded to Birch.

*VACATED and REMANDED.*