**W & D SHIPS DECK WORKS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–308C.

United States Court of Federal Claims.

Dec. 1, 1997.

Mary C. Sorrell, Neptune Beach, FL, for plaintiff.

Melida N. Hodgson, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION AND ORDER [1]

WEINSTEIN, Judge.

On April 30, 1997, plaintiff filed a complaint seeking to enjoin award of a federal government contract until plaintiff's proposal was reinstated in the negotiation process, together with a motion for a temporary restraining order (TRO). The government indicated it would take no further action on the contract until a hearing was held on May 5, 1997. At the hearing, after a full argument on the merits of plaintiff's complaint, the court denied the TRO motion and, *sua sponte*, granted judgment to the government on the pleadings, and dismissed the complaint. This opinion constitutes the court's written findings of fact and conclusions of law.

### Facts

None of the following facts are in dispute. All of the facts mentioned in this section and considered by the court in its decision are either alleged in plaintiff's complaint or found in the incorporated documents, and are taken as true for purposes of this opinion and order. *See Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (discussing Fed.R.Civ.P. 12(b)(1)).

On December 11, 1996, the United States government, acting through the Military Sealift Command, Atlantic (MSCLANT), of the United States Navy, issued Solicitation No. N62381–97–R–0300 (the solicitation), requesting proposals on a negotiated fixed-price contract to: (1) paint the topsides of ships; (2) repaint the topsides of ships; (3) paint the decks of ships; (4) apply non-skid surfaces to the decks of ships; (5) paint interiors of ships; and (6) clean the exterior painted surfaces of ships. Solicitation at 1, 8, 12, 16, 19, 23, 26. All the ships subject to the contract were located either in Norfolk, Vir-

---

1. This opinion and order was originally filed on August 14, 1997. It is being reissued for publication, at the government's request, with minor revisions not affecting the substance of the decision.

ginia, or in Baltimore, Maryland. *Id.* at 28. The government designated the contract as a 100% set-aside for small businesses. *Id.* at 1. Plaintiff, W & D Ships Deck Works, Inc. (W & D), a small company located in Atlantic Beach, Florida, submitted a timely proposal. Compl. ¶¶ 1, 6.

Around March 21, 1997, the contracting officer ("CO") for the solicitation notified plaintiff that its proposal was determined to be outside the competitive range for negotiations due to unacceptable deficiencies in the technical proposal. *Id.* ¶ 7. Plaintiff's protest of this decision with MSCLANT was filed on March 28, 1997, and rejected by the CO, with a detailed explanation of the reasons, on April 22, 1997. *Id.* ¶¶ 8, 9; MSCLANT letter at 1 (Ex. D to Compl.)

Plaintiff's complaint seeking injunctive relief in this court, filed on April 30, 1997, alleges that there was "no major deviation in Plaintiff's proposal from any of the Solicitation's requirements," Compl. ¶ 11, and that any deviations were "minor irregularities," *Id.* ¶ 13, involving "post-bid responsibility matters or post–award contract administrative matters." *Id.* ¶ 11.

### Discussion

At the hearing, the court denied plaintiff's motion for a TRO as unlikely to succeed on the merits and dismissed the complaint, *sua sponte,* pursuant to Rules of the United States Court of Federal Claims (RCFC) 12(b)(4), because there were no material facts in question and the government was clearly entitled to judgment.

### I. 1996 Bid Protest Act

The recent passage of the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874–75 (1996), brought about a significant enlargement in the court's bid-protest jurisdiction, to encompass post-award protests. In doing so, the 1996 legislation repealed 28 U.S.C. § 1491(a)(3), the former statutory source of the court's authority to provide equitable relief in pre-award bid protest cases, and substituted a broader jurisdictional section, codified at 28 U.S.C. § 1491(b)(1)–(4), encompassing pre- and post-award objections. It provides, in part:

(b)(1) Both the Unites [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

28 U.S.C. § 1491(b). The scope of the review to be utilized in such cases is set out at 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4).

Under the new statute, the plaintiff's suit may be based, not only on (1) an objection to a solicitation, or (2) an objection to a proposed award, but also on (3) an objection to an award or (4) a violation of a statute or regulation. 28 U.S.C. § 1491(b)(1).

This court has long had jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), to hear cases and grant relief premised on the theory that when the government invited bids or solicited proposals from the public, it entered into a supposedly "implied-in-fact" contract to treat those bids or proposals fairly. *See e.g., CACI, Inc.–Federal v. United States,* 719 F.2d 1567, 1573 (Fed.Cir.1983); *United States v. John C. Grimberg Co., Inc.,* 702 F.2d 1362, 1367 (Fed.Cir.1983); *Keco Indus., Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233, 1237 (1970). (Of course a contractual responsibility not in fact imposed by the parties, whether explicitly or indirectly, is not properly implied "in fact," but "in law." *Cf. Hercules Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 986, 134 L.Ed.2d 47 (1996) (explaining difference between implied in fact and implied in law contracts).

*See* 28 U.S.C. § 1491(a); *CACI*, 719 F.2d at 1573; *Keco*, 428 F.2d at 1233; *Heyer Prods. Co. v. United States*, 147 Ct.Cl. 256, 177 F.Supp. 251 (1959).

In 1982, the court was first given the authority to grant equitable relief in such cases. Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 25, 39–40 (1982) (codified at 28 U.S.C. § 1491(a)(3)). In the 1996 amendment to the Tucker Act, this court's jurisdiction to grant equitable relief in pre-award bid protests was repealed. *See* 28 U.S.C. § 1491(a)(3) (1994) (repealed in 1996).

The district courts too have long exercised jurisdiction to hear and decide bid protests, based on the decision of the U.S. Court of Appeals for the District of Columbia that the Administrative Procedure Act (APA) gave disappointed bidders standing to challenge government contract award decisions. *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970). This court's 1982 grant of pre-award equitable jurisdiction was meant to mirror the district court's post-award *Scanwell* jurisdiction. *See CACI*, 719 F.2d at 1573–74 (stating that Congress intended 28 U.S.C. § 1491(a)(3) to make the *Scanwell* doctrine applicable to the Claims Court). A body of case law developed merging the APA "arbitrary" review standard and the implied contract theory, basically resulting in courts reviewing challenged agency decisions in the contract award process either under the arbitrary and capricious standard or for a violation of a law or regulation. *Cf. NKF Eng'g, Inc. v. United States*, 805 F.2d 372, 376 (Fed.Cir.1986); *CACI*, 719 F.2d at 1573.

The repeal by the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874–75 (1996) of § 1491(a)(3) eliminated this court's statutory authority to grant equitable relief on the basis of the old implied contract theory. The new grant of equitable authority is limited to claims in which the plaintiff: (1) "objects" to a solicitation; (2) "objects" to an award or proposed award; or (3) alleges a violation of a statute or regulation. 28 U.S.C. § 1491(b)(1).

While the new section makes no express mention of bringing a claim under the old breach of implied contract theory, there is some question whether an "objection" under this new section may be based on the former standard of violation of the duty of fair dealing. *Cf. Cincom Sys. Inc. v. United States*, 37 Fed.Cl. 663 (1997) (using old implied contract theory). (The court retains its authority under the implied contract theory to award monetary damages (bid preparation costs). These bid or proposal preparation costs are also recoverable under the new statute. *See* 28 U.S.C. § 1491(b)(2).)

Another unresolved question is whether the district courts, which currently also have authority to hear bid protests under the implied contract theory and did not lose any powers with the repeal of § 1491(a)(3), as did this court, may continue to hear and decide bid protests seeking equitable and monetary relief under their previous *Scanwell* jurisdiction if the automatic phase out of their jurisdiction under the new statute is allowed to run its course. Continuation of such jurisdiction may be at odds with the legislators' apparent intentions. *See Bid Protests: Additional Authority for the Courts*, Nash & Cibinic Report, March 1997, ¶ 14 (reporting that Congress had hoped in the early stages of this legislation to eliminate the district courts' jurisdiction over bid protests altogether). Because of strong opposition, a compromise resulted whereby the district courts' jurisdiction would be phased out automatically over four years unless Congress legislated otherwise. *Id.*

## II. Standard of Review

Under the court's new bid protest jurisdiction, the court applies the review provisions of 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4). Section 706 states:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

Because this bid protest seeks review of agency action already taken, subsection (2) applies. Most of the subsections under section (2) might apply in various bid protests, but only subsection (A) appears to apply in this case. Because there is no constitutional issue, (2)(B) does not apply. Because plaintiff alleges a violation of a regulation, not a statute, (2)(C) does not apply. Section (2)(D) does not apply because plaintiff does not allege that MSCLANT failed to follow its procedures. (There is no claim that the agency did not follow its procedures, e.g., that MSCLANT did not bother having anyone review the proposal. The claim is that the agency reached an incorrect or arbitrary result. Although this is a subtle distinction, it is the one (2)(D) appears to be trying to catch.) This case is not covered by 5 U.S.C. §§ 556, 557, or a review of an agency hearing, so section (2)(E) does not apply. And the facts of this case are certainly not so egregious as to bring section (2)(F) into play.

That leaves section (2)(A), which fits plaintiff's allegation that the CO erred in his evaluation of its proposal.

The scope of judicial review set out at 5 U.S.C. § 706(2)(A) appears to be the applicable standard in this case. That subsection authorizes a reviewing court to set aside any agency actions it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### III. Merits of Plaintiff's Complaint

In the case currently before the court, plaintiff does not object to the solicitation, nor to any award (since none has been made). Therefore, it may obtain review under § 1491(b)(1) based only on an objection to the proposed award or violation of a statute or regulation. Plaintiff's complaint does not identify any specific statute or regulation that MSCLANT officials allegedly violated to plaintiff's prejudice in reviewing the proposal. Rather, the complaint merely alleges generally that plaintiff's proposal is satisfactory and complete in respects MSCLANT found unsatisfactory and incomplete and implicitly contends that the CO abused his discretion in making the competitive range determination. Plaintiff's sole basis for objecting to the proposed award—to another—is that its own bid was not considered although it was within the competitive range.[2]

The competitive range is the group of proposals submitted in response to a government solicitation "that could be made competitive through negotiation." *CACI,* 719 F.2d at 1571. Under the federal regulation controlling evaluation for inclusion in the competitive range of negotiated bid proposals, a CO, after receiving all the proposals, must determine which proposals are in the competitive range for the purpose of conducting further negotiations. 48 C.F.R. § 15.609(a) (FAR § 15.609(a)). All proposals not in the competitive range are excluded from further negotiations and consideration.

The Federal Circuit has determined that COs have broad discretion in evaluating proposals and determining which, if any, fall into

---

**2.** At the hearing, defendant disclosed that plaintiff's bid was the lowest.

the competitive range. *Birch & Davis Int'l, Inc. v. Christopher,* 4 F.3d 970, 973 (Fed.Cir. 1993). Contracting officers' statutory discretion even permits them to limit the competitive range to exclude some proposals that otherwise would be included if this will promote efficient competition by narrowing the field. *See* 10 U.S.C. § 2305(b)(4)(B); 41 U.S.C. § 253b(d)(2).

■ Proposals need not be included within the competitive range if they are "so technically inferior or out of line as to price, as to render discussions meaningless." *Birch & Davis,* 4 F.3d at 974 (quoting *M.W. Kellogg Co./Siciliana Appalti Constr., S.p.A. v. United States,* 10 Cl.Ct. 17, 23 (1986)). By regulation, the CO is instructed to include only those proposals that have "a reasonable chance of being selected," excluding all others. FAR § 15.609(a). However, the FAR requires that the benefit of the doubt be given to those proposals that are on the borderline for inclusion. *Id.*

■ Courts may not overrule agency competitive range decisions except where the CO's actions are clearly unreasonable. *Birch & Davis,* 4 F.3d at 973. "Close scrutiny" is given only to decisions that result in a competitive range of only one bidder.[3] *Id.* at 974. GAO decisions uniformly hold that agency decisions establishing the competitive range are "primarily a matter of administrative discretion which will not be disturbed ... absent a clear showing that the determination lacked a reasonable basis." *PRC Computer Center, Inc.,* 55 Comp. Gen. 60, 68 (1975); *see also Talco, Inc.,* 89–2 CPD 171 (1989); *Interaction Research Institute, Inc.,* 89–2 CPD 15 (1989). Although not binding, *see e.g., National Forge Co. v. United States,* 779 F.2d 665, 668 (Fed.Cir.1985) (citing *Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 617 F.2d 590, 597 (1980)), GAO decisions on this topic are more numerous and detailed than decisions by this court or the Federal Circuit. Because the decisions are well reasoned, this court adopts the GAO's approach in these competitive range decisions.

The CO, by statute, is limited to evaluating proposals based on the factors identified in the solicitation. 10 U.S.C. § 2305(b)(1). The FAR too states that the competitive range determination is based on price and "other factors that were stated in the solicitation." FAR § 15.609(a). The CO. informed plaintiff that it had been rejected because its technical proposal did not contain a substantial amount of information required by the solicitation. Plaintiff received unsatisfactory ratings on items within each of the four sections in the evaluation factor sequence.

■ Section L–16 of the solicitation ("Requirements for submission of Proposals") states that the "offeror's technical proposal *must* contain, but not necessarily be limited to, data set forth for the [enumerated] evaluation factors.... Failure to respond to any one of the evaluation factors may result in disqualification of the proposal." *Id.* at 82 (emphasis in original). It also states that "[d]ata previously submitted, or presumed to be known, ... cannot be considered unless they are physically incorporated in the proposal," and that "[a]ll information must be presented in sufficient depth to allow for the Government to make a fair and comprehensive evaluation of the offeror's understanding of the specification." *Id.* at 81. These statements make it clear that MSCLANT may disqualify an offeror if its technical proposal is deemed incomplete and that the technical proposals had to contain all of the information specifically requested.

Section M of the solicitation ("Evaluation Factors for Award"), notes that for proposals to be technically acceptable, "all categories [listed in section L] must be evaluated as technically acceptable." *Id.* at 85. Gaps in the following information led the CO to find plaintiff's proposal to be technically unacceptable and, as a result, outside of the competitive range.

First, in section 16.1.0, the solicitation required offerors to include in their technical proposals "a narrative which demonstrates an understanding of the overall scope of work." *Id.* at 82. The narrative also had to

---

**3.** While the plaintiff did not seek "close scrutiny" review, the court determined at the hearing that the CO's competitive range included three of the seven proposals submitted. Therefore, the heightened level of review would not apply to this protest.

describe in detail how the contractor intended to perform the work. *Id.* There are six work items involved in the contract: (1) topside initial coating, *id.* at 8; (2) topside maintenance recoating, *id.* at 12; (3) exterior decks initial coating, *id.* at 16; (4) exterior deck non-skid coating, *id.* at 19; (5) interior painting, *id.* at 23; and (6) cleaning of exterior painted surfaces, *id.* at 26. Each item is described separately and in detail in section C of the solicitation.

Plaintiff's proposal discussed items three and four, regarding deck work only and thus, as the CO reasonably found, did not "demonstrate a satisfactory understanding of the *overall* scope of work required," which merited an unsatisfactory rating. MSCLANT letter at 1 (emphasis in original). Plaintiff failed even to mention any aspect of the contract not related to the deck work. Plaintiff's narrative provides only a cursory discussion, in fewer than twenty lines of text, of only one item—item four, the application of non-skid surface material. Proposal at 1.

Second, the solicitation in section 16.1.3 required offerors to provide information concerning five specific areas of material control. The CO reasonably found that the plaintiff's answers were "vague and brief," essentially failing to address any of the five areas in sufficient depth. MSCLANT letter at 1. Plaintiff's proposal mentions all five items, but in such cursory fashion as to be practically useless to evaluators. For example, with respect to item five, ripout material to be reinstalled, the proposal states: "Material which has been removed from the ship for reinstallation at a later dateis [sic] also kept segregated and inventoried separately." Proposal at 3. That is a conclusory statement, not a description of how it is done, including pertinent data, as is required. Similarly, in response to item three, environment protection for material stored (covered stowage and/or weather proofing) and size, location and type of material storage, the proposal states: "When received, the products are stored in an environmentally controlled warehouse." *Id.* The answer again

contains less information than the question. The point of these questions is to provide the government evaluators with sufficient information to determine which offerors have the ability to perform the contract. Plaintiff's answers simply do not meet that need and it was reasonable for the agency to find them deficient.

Third, in section 16.2.0, the solicitation required offerors to submit a list of the capital equipment available to perform the contract and to provide a description of the facility. Plaintiff's proposal merely states that it "has all the necessary tools," "*such as* grinders, needle guns, descobraders, air tools, and air compressors." Proposal at 4 (emphasis added). Thus, it does not specify *any*, never mind *all*, the equipment it has. (A simple affirmation that plaintiff has the tools, accompanied by an illustrative listing premised with "such as" may be read to mean that plaintiff does *not* actually have any of those particular items). The proposal also states that plaintiff has a tentative agreement to lease 10,000 square feet from its subcontractor to use as its facility for this contract but does not further describe this facility. Clearly these disclosures do not permit the agency to make an informed selection among offerors and warrant the CO's rating of the solicitation as unsatisfactory on these points. MSCLANT letter at 2.

Fourth, in section 16.3.1, the solicitation required offerors to identify subcontractors and "explain the procedures to be utilized to control materials, quality assurance and inspections." Solicitation at 83. The CO reasonably rated plaintiff's response to this item to be unsatisfactory, MSCLANT letter at 2, because in response to this item, plaintiff merely identified the subcontractor (Surface Technologies) that would be used on the contract. Proposal at 5. Plaintiff did not even hint at the procedures that it intended to use to control materials used by the subcontractor and to perform quality assurance and inspections of the subcontractor's work, as specifically required by the solicitation.[4] The proposal simply concludes that the sub-

---

4. Plaintiff's statement, elsewhere in the proposal, that the subcontractor will be subject to the same quality control plan as the contractor, also does not address the specific requests for information in the solicitation.

contractor is "fully cognizant of the contract requirements and specifications for the performance of those requirements," *id.*, but does not explain how the conclusion was reached, or how the *contractor* will *ensure* subcontractor compliance, as is specifically required by the solicitation.[5]

Fifth, in section 16.3.2, the solicitation required a detailed description of the quality control plan the contractor intended to implement, including providing the identity of the "individuals" who would perform quality control functions and discussing their other duties, as well as listing all NACE Certified Coating Inspectors who would be involved. Solicitation at 83. The CO reasonably rated plaintiffs reply to this section as unsatisfactory because plaintiff did not identify any specific individuals who would perform quality control functions and, perforce, did not list the other duties of those individuals. MSCLANT letter at 2. According to the agency, the plan also cited a calibration system standard that had been canceled several years earlier. *Id.* It is obvious to the court that information like the identity of the quality control officers and the extent of their other duties is essential to the government's analysis of a bid such as this. Without this information, the adequacy of plaintiff's proposal is purely speculative.

Sixth, in section 16.4.0, the solicitation required the offerors to discuss relevant past experience. The section listed seven specific items that the offerors "shall" address with respect to prior experience. Solicitation at 83–84. The CO reasonably rated plaintiff's response to this section as unacceptable because plaintiff cited only its previous experience with non-skid deck surface application (only one part of the contract) and because plaintiff failed to answer at least five of the seven specific requests for information concerning previous contract experience. MSCLANT letter at 2–3. (Plaintiff did not provide types of availability, man-days expended, required and actual completion dates, original and final contract prices, and

percentages of growth. *Id.*) In response to this request, which obviously would provide exceptionally valuable information to government officials deciding to whom to award the contract, plaintiff's proposal lists several previous jobs, but provides only the ship name, the job location, and a contact name and phone number, and does not even identify the type of work done on these jobs. Again, for no reason apparent from the proposal, plaintiff withheld specifically requested information that appears to be essential to MSCLANT's decision-making process.

The GAO has soundly upheld agency exclusions of proposals from the competitive range for technical unacceptability when the proposal would require "major revisions" to become acceptable. *See, e.g., Interaction Research,* 89–2 CPD 15 (1989); *PRC,* 55 Comp. Gen. at 69 (citing other decisions). That would be the case in this instance. For plaintiff to make its proposal technically acceptable, it would have to revise, and substantially amplify, all but one section. Most of those revisions would entail significant changes or extensive additions, thus requiring a "major revision" of the original proposal.

▮ The GAO has also properly concluded that if a proposal fails to provide information sufficient to determine if the offeror is technically acceptable, it is reasonable for the agency to exclude it from the competitive range, *Talco,* 89–2 CPD 171 (1989); that if an offeror fails to demonstrate in its proposal how it will perform the work required by the contract, as required by the solicitation, it is within the agency's discretion to exclude the proposal from the competitive range, *Federal Services, Inc.,* 89–2 CPD 182 (1989); and that it is within an agency's discretion to exclude a technically unacceptable proposal from the competitive range even if it is from the low price bidder. *Id.* This court agrees with these standards, and each supports upholding the CO's decision in this case.

---

5. This complete nonresponsiveness on the part of plaintiff was deemed sufficient by plaintiff's counsel at the hearing because the agency knew the subcontractor. However, the proposal specifically states: "Data previously submitted, or

presumed to be known … cannot be considered unless they are physically incorporated in the proposal." Solicitation at 81. Confronted with this discrepancy, plaintiff's counsel had no further explanation.

The GAO has outlined five factors that it considers in reviewing an agency decision to exclude a proposal from the competitive range. *PRC*, 55 Comp. Gen. at 69; *see also Electrospace Systems, Inc.*, 58 Comp. Gen. 415 (1979). This court finds those factors well reasoned (and even self-evident) and adopts them for use in this case. Those factors are: (1) did the solicitation specifically call for the information that the agency found lacking; (2) do the informational deficiencies · tend to show the offeror did not understand the contract's requirements; (3) does the offeror essentially have to rewrite the proposal to correct the deficiencies; (4) was only one offeror left in the competitive range; and (5) whether the proposal, if reasonably correctable, would provide a cost savings. *Id.*

Considering these five factors in turn, it is clear, first, that the solicitation specifically called for the information that the agency found lacking. Indeed, items 16.1.3 and 16.4.0 broke the specific information required down into enumerated subparts that plaintiff did not even attempt to address. This court finds that every item found lacking in plaintiff's proposal was specifically requested by the government in the solicitation.

Plaintiff did not provide any reasons why its proposal was deficient in so many respects. Except for an unconvincing explanation (in court) of why it was unable to provide the costs or man-days expended on earlier contracts in response to a specific request in the relevant experience section, Tr. 38–42, plaintiff contends that its proposal is as complete as it needs to be. The court disagrees. The proposal fails to demonstrate how plaintiff will perform the work required under the contract and is thus, as the CO found, grossly deficient.

Second, the informational deficiencies in the proposal tend to show that plaintiff did not understand the scope of the contract. Even at the outset, in the statement of work, plaintiff never mentioned at least four of the six major work components of the contract. Plaintiff provided a quality control plan that the agency determined did not apply to this contract. And finally, in the list of experience required by 16.4.0, plaintiff discussed only non-skid application experience, ignoring the other large components of the project.

At the hearing, plaintiff argued that there was no need for it to address the aspects of the contract it ignored because any firm that had the technical ability to apply the non-skid surface could also do all the other work. Even if it were true that plaintiff had the technical ability to perform the painting and cleaning aspects of the contract, and that all others capable of doing one type work could do it all, plaintiff nonetheless was required to *demonstrate* to MSCLANT that plaintiff had this ability and that it understood the scope of the contract, and it was required to do this *in the proposal.*

Third, plaintiff would have to rewrite most of its proposal in order to provide the missing information. The solicitation required that offerors' technical proposals provide information basically in nine areas. MSCLANT reasonably found plaintiff's proposal deficient in all but one of those areas. In order to correct these deficiencies, plaintiff would have to add so much additional information in most of the sections that the final product would be tantamount to a complete rewriting of the proposal. For example, in the statement of the work section, plaintiff would have to add information about at least four of the six work components of the contract. Or, in the experience section, plaintiff would have to add information concerning five of the seven specific requested items for every job listed. After such changes, the new proposal would necessarily be drastically different than the one submitted.

Fourth, plaintiff has not alleged that the CO approved only one offeror for the competitive range, so this factor does not apply in this case. *See* footnote 6, *supra* (discussing this point).

Fifth, because this court agrees with the agency's determination that plaintiff's proposal was not reasonably correctable, the cost savings factor does not apply in this case.

Each of the applicable factors weighs heavily in favor of upholding the agency's

decision in this case. In light of the broad discretion accorded contract officers in making competitive range determinations by the Federal Circuit, *Birch & Davis*, 4 F.3d at 973, MSCLANT's evaluation of plaintiff's proposal was not "clearly unreasonable," *id.*, but rather, manifestly reasonable.

## IV. Plaintiff's Motion for a TRO

■■■ When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction. *See Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 268 (1997); *National Football League Properties, Inc. v. Coniglio*, 554 F.Supp. 1224, 1225 (D.D.C.1983). Plaintiff must show: (1) that the plaintiff will suffer a specific irreparable injury if performance is not enjoined; (2) that the plaintiff is likely to succeed on the merits of the claim; (3) that the harm to plaintiff outweighs any harm to defendant; and (4) that granting the requested relief serves the public interest. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983). For the purpose of ruling on this motion for a TRO, the court has assumed all facts alleged in the complaint to be true, as in ruling on a motion to dismiss. *See Neitzke*, 490 U.S. at 326–27, 109 S.Ct. at 1832–33.

For the reasons discussed in sections I and III, the court finds that plaintiff has no reasonable chance of success on the merits of its claim, and as such fails to meet its burden on this prong of the test. The court therefore does not consider the remaining test factors. *Cf. Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 336, 105 S.Ct. 3180, 3197, 87 L.Ed.2d 220 (1985) (O'Connor, J., concurring).

## V. Dismissal Pursuant to RCFC 12(b)(4)

■■■ At the conclusion of the TRO hearing, the court dismissed plaintiff's complaint *sua sponte*, pursuant to RCFC 12(b)(4).[6] *See Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725 (D.C.Cir.1990); *Miller v. United States Postal Serv.*, 231 Ct.Cl. 804, 809 (1982). Under RCFC 12(b)(4), the court may decide a case based on the pleadings[7] when all material facts are undisputed and one party is clearly entitled to judgment. *See Flora v. Home Federal Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982) (discussing similar Fed.R.Civ.P. 12(c)); *Duhame v. United States*, 127 Ct.Cl. 679, 119 F.Supp. 192, 195 (1954) (discussing judgment on the pleadings generally). Stated another way, the court should dismiss under Rule 12(b)(4) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This rule is meant not just for outlandish or ridiculous claims; it is intended to apply as well to cases, like this one, that are reasonable but "ultimately unavailing." *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1832. There are no additional facts plaintiff could adduce that would

---

**6.** This court's Rule 12(b)(4) is analogous to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Widdoss v. Secretary of Dep't of Health & Human Servs.*, 989 F.2d 1170, 1178 n. 7 (Fed.Cir. 1993) (The court looks to the general federal law in interpreting rules analogous to the Federal Rules of Civil Procedure.); *Algonac Mg. Co. v. United States*, 198 Ct.Cl. 258, 458 F.2d 1373, 1376 (1972).

**7.** Defendant has not filed an answer. (The court has granted defendant's suspension of the proceedings pending issuance of this order.) However, an answer is unnecessary because this dismissal rests solely on the complaint and the incorporated attachments.

Written instruments attached to a pleading as exhibits are, by rule, considered part of the pleading. RCFC 10(c). Plaintiff attached copies of the CO's initial letter informing plaintiff that it had been eliminated from the competitive range (Ex. A), the proposal (Ex. B), the plaintiff's administrative protest (Ex. C), and the CO's reply to the protest (Ex. D), which are thus considered part of the pleadings for RCFC 12(b) purposes.

While plaintiff did not attach a copy of the solicitation as an exhibit to its complaint, RCFC 9(h)(3) requires a plaintiff to include with its complaint a copy of all contract documents upon which its claim is founded. The court finds that the solicitation in this bid protest case falls into this category and should have been attached as an exhibit to plaintiff's complaint. The government provided a copy of the solicitation. Plaintiff having raised no objection to its authenticity or use at the hearing on the TRO, the court has treated it as incorporated for purposes of RCFC 12(b).

support its claim, in light of the uncontested documents that the court has reviewed.[8]

In addition, *sua sponte* dismissal by the court is appropriate in this case because the parties were provided ample notice and opportunity to be heard during the lengthy hearing on the merits.[9] *See Jefferson Fourteenth Assoc. v. Wometco De Puerto Rico, Inc.*, 695 F.2d 524, 526 (11th Cir.1983) (discussing importance of notice).

■■■ Even if the adversely affected party is without notice, however, dismissal is appropriate where it is obvious that amendment of the complaint would not rectify its deficiency. *See Baker*, 916 F.2d at 726; *Omar v. Sea–Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir.1987). That is the situation in this case. Not to dismiss under such circumstances would amount to a waste of judicial resources. *See Baker*, 916 F.2d at 726.

The basis of plaintiff's complaint is that its proposal did not deviate from the requirements of the solicitation in any major way and that the CO abused his discretion or exceeded his authority by excluding the proposal from the competitive range. Therefore, the sole question in this case, as presented and argued by plaintiff, is whether the CO was acting within his authority and discretion when he rejected the proposal. Based on the contents of the solicitation, the proposal, the protest, and the CO's response to plaintiff's protest, none of which are in dispute, it is clear to the court that plaintiff's proposal was grossly deficient in numerous important respects. The proposal did not provide MSCLANT with nearly enough of the essential core information it requested to permit a well-reasoned decision that plaintiff was capable of performing the contract, never mind the most capable of doing so. Only a major revision, effectively a total rewriting, could bring the proposal into compliance with the solicitation's requirements. The government is not obligated to permit plaintiff this opportunity. On the contrary, the court is satisfied that it would have been irresponsible for the CO to allow such revision or to continue to include plaintiff in the competitive range based on the information contained in the proposal. The court also is satisfied, given the insufficiency of the proposal, that discovery should not have been permitted and that amendment or revision of the complaint would have made no difference in introducing relevant facts. *See Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 495, 20 S.Ct. 708, 712, 44 L.Ed. 856 (1900) (dismissing complaint as "obviously devoid of

---

8. Even if there were other, impermissible, grounds for reaching the same decision, the court need not consider these when the contemporaneous reason provided by MSCLANT supports its decision. In cases involving 5 U.S.C. § 706(2)(A), the standard of review applied in this case, the United States Supreme Court has decided that "[t]he validity of the [agency's] action must ... stand or fall on the propriety of [the contemporaneous explanation of the agency decision]." *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Here the court has found that the agency decision, as explained at the time by the CO in the letter attached as an exhibit to plaintiff's complaint, was proper for the reasons given by the agency. Plaintiff is not entitled to discovery of other possible grounds for the agency's decision, especially when plaintiff did not allege that it depended on reasons other than those stated in the CO's letter.

9. At the hearing, plaintiff relied on the arguments made in the complaint (*i.e.* that the proposal did not deviate in any major way from the requirements found in the solicitation). Plaintiff did not allege, either in the complaint or at the hearing, the existence of any evidence of foul play by the government's agents, of any conflict of interest, or of any other evidence that might be material either to whether the competitive range determination was improperly made or to whether the case required further evidentiary review (close scrutiny). *Cf. Birch & Davis*, 4 F.3d at 974 (explaining grounds for close scrutiny review).

At the hearing, plaintiff's counsel repeatedly stated that she had uncovered case law establishing that a competitive range determination must be "reasonably susceptible to being made acceptable." Tr. 18. However, the only case specifically cited was a GAO decision. Such decisions, while possibly persuasive, are not binding in this court and do not overcome conflicting precedent established by the Federal Circuit. *See National Forge*, 779 F.2d at 668.

Before issuing its ruling, the court at the hearing indicated generally its proposed opinion on the merits. Tr. 55–56. Plaintiff's counsel, when asked if she had further questions, stated that she did not and agreed that the plaintiff had nothing other than what was in the complaint. No request to amend the complaint, nor any request for discovery, was made. Tr. 56.

equity ... such invalidity be[ing] incapable of remedy by amendment").

### Conclusion

If the government were required to give further consideration to proposals like that submitted by plaintiff, or allow further response, bidders would have no incentive to make their best (or even responsive) proposals early in the process. This would make the bidding process completely chaotic; bids and requests for proposals would become moving targets, never to be halted or hit. This court will not accept plaintiff's invitation to establish a contracting scheme that would be so contrary to the established rules governing bid proposals and their evaluation, particularly when the solicitation warned that it would not permit supplementation, or the cross–referencing envisioned by plaintiff.

For the reasons stated herein, plaintiff's motion for a TRO is denied and its complaint is dismissed, without prejudice. The Clerk is directed to enter judgment for defendant.