**Jonathan BURNETT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–130C.

United States Court of Federal Claims.

April 28, 1998.

Kent J. Rubens, West Memphis, AR, for plaintiff. Timothy O. Dudley, Little Rock, AR, of counsel.

Dorann Banks, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lt. Col. Kevin J. Chapman and Capt. David L. Parker, Department of Army, of counsel.

### ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss for failure to state a claim upon which relief may be granted, or in the alternative, for summary judgment. At issue on the complaint is whether the United States Department of the Army (the "Army") breached a Cadet Contract with a Reserve Officers' Training Corps ("ROTC") scholarship recipient for failure to pay the increase in tuition and mandatory fees when the cadet was transferred to an educational institution of higher cost. At issue on defendant's motion to dismiss is whether a judgment against the cadet entered after trial on a claim based on denial of equal protection and equitable estoppel forecloses relitigation of his contract claim. Argument is deemed unnecessary.

### FACTS

The United States District Court for Eastern District of Arkansas heard plaintiff's complaint on essentially the same facts now under consideration. *See Burnett v. United States Army*, No. LR–C–94–442 (E.D.Ark. Sept. 27, 1996). After trial the district court dismissed plaintiff's complaint with prejudice. Unless otherwise noted, the facts are taken from the district court opinion or documents submitted with the parties' briefs before this court.

On August 24, 1992, Jonathan Burnett ("plaintiff") and the Army executed a Cadet Contract (the "Contract"), by which the Army agreed to pay for plaintiff's undergraduate tuition and fees in consideration for plaintiff's commitment to serve in the U.S. Army Reserve for a term of years after graduation. The Contract requires plaintiff to attend the University of Arkansas–Fayetteville and to remain a full time student at the named institution until receipt of his degree. The Contract specifies that plaintiff normally shall not be permitted to transfer to a higher-cost school at Army expense.[1]

During the spring semester of his sophomore year, plaintiff requested a transfer from the University of Arkansas to Washington University in St. Louis, Missouri. The annual cost of attendance at Washington University exceeded that at the University of Arkansas by approximately $15,564.00 at the time of plaintiff's request. Major Steve Womack, Assistant Professor of Military Science at the University of Arkansas counseled plaintiff that it was " 'likely' " that the Army would pay $8,000.00 or 80% of the annual tuition, whichever was greater. *Burnett*, slip op. at 3. Plaintiff also was informed that personnel at the University of Arkansas did not have the authority to approve cadet transfers.

Plaintiff and the Army executed an addendum to the Contract on April 1, 1994, in which John A. Hamilton, Professor of Military Science at the University of Arkansas, confirmed plaintiff's acceptance at Washington University and recorded the cost increase reflecting Washington University's higher tuition and mandatory fees. The addendum recites that the Army's cost pursuant to the transfer is limited to the "cap provision" of the Contract and that plaintiff shall bear costs in any amount above the cap provision. Nowhere in the Contract or the addendum is the term "cap provision" defined; however, the official Army Cadet Command interpre-

---

1. The Cadet Contract form that was used before plaintiff entered the subject Contract contained the following statement: "I understand that I may not transfer to a higher-cost school." The current form, in effect since July 1992, states: "Normally, I will not be granted a transfer to a higher cost school at Army expense." As revised, the language in the current Cadet Contract affords the Army greater discretion to accommodate special circumstances to alleviate hardships, *e.g.*, when a cadet can no longer obtain a degree in his or her academic major, or cannot be admitted to the requisite junior and senior level course at the institution where the cadet is enrolled, or when the institution is no longer affiliated with the ROTC program. *See Burnett*, slip op. at 6.

tation of the Contract is that "cap provision" or "limited cap provision" refers to the tuition of the institution designated in a Cadet Contract.[2]

Major Harold Iverson, Fourth Region, U.S. Army Cadet Command, approved plaintiff's transfer request in an April 28, 1994 memorandum to Professor Hamilton, with the caveat that "[a]ny additional cost above the tuition cost at the University of Arkansas will be absorbed by Cadet Burnett." Major Womack, surprised by the decision of the Fourth Region declining to cover plaintiff's additional tuition costs, wrote a letter to plaintiff's father expressing his dissatisfaction with the decision and general feelings on the matter. Prior to the Fourth Region's decision, Maj. Womack was "inclined to believe" that the additional cost would be approved, yet had not consulted directly with the Fourth Region regarding plaintiff's transfer request.

Plaintiff's father contacted Colonel Leo E. Keenan III, Director, Cadet Personnel and Administration, U.S. Army Cadet Command Headquarters to register his dissatisfaction with the decision of the Fourth Region.[3] After consulting with Maj. Iverson, Col. Keenan concluded that the action taken on plaintiff's transfer request was proper. Shortly thereafter, Col. Keenan conducted a video teleconference with the several regional officials responsible for approving cadet transfer requests. Previously unaware of any inconsistency in policy among the regions, Col. Keenan learned that a cadet's chances for a subsidized transfer to an educational institu-

tion of higher cost depended in large part on the regional administration handling the request.[4] On July 23, 1994, Col. Keenan issued a memorandum stating, in part:

> Recent inquiries have shown indications that not all regions are operating under the same guidance.... These deviations in policy are not only discriminatory in nature, but also put additional strains on an already restrictive budget. Cadets under contract are restricted to attendance at the institution listed on the scholarship contract. Any deviation from the stated contract must be agreed to by both parties [in a manner] that is both legally sound and binding.

> Since the term "limited cap provisions" is not covered in the scholarship contract language in terms of dollars, it is covered legally by the addendum which specifies the limited cap provision in monetary terms. Cadets are to be informed that the "limited cap provision" is his or her tuition and fees paid at the school listed on her or her scholarship contract. It does not increase due to a requested transfer to a higher cost school. This emphasis can not be down-played in its importance to both the cadet and cadre personnel.

Colonel Keenan testified by deposition that his use of the term "discriminatory" was not in reference to race, creed, or gender, but "discriminatory in the sense that there are not uniform applications of the same policy with regard to individuals." Deposition of Leo E. Keenan III, Nov. 10, 1994, at 67.

---

2. Prior to October 3, 1991, only U.S. Army Cadet Command Headquarters in Fort Monroe, Virginia, held the authority to approve cadet transfer requests. A memorandum dated October 3, 1991, from Colonel Joseph Cretella, Director, Cadet Personnel and Administration, U.S. Army Cadet Command Headquarters delegating authority to approve transfer requests to region commanders states that "[t]uition will not exceed the limited cap provisions of the scholarship contract. Transferring cadets will pay costs above the cap." See Burnett, slip op. at 3.

3. Colonel Keenan succeeded Col. Cretella as Director, U.S. Army Cadet Personnel and Administration.

4. During the school years 1991–93 and 1993–94, a cadet's request for transfer to a higher-cost school had a 50% chance of approval in Region

1, a 100% chance of approval in Region 2, and a 33.5% chance in Region 4. The Army previously eliminated Region 3 pursuant to a restructuring of Cadet Command. Army Cadet Command Regulation 145–1 (cited in Burnett, slip op. at 5), states, in part, that cadets may not transfer to a higher-cost school. At the time of the district court's decision, the regulation was unmodified and still in full effect. Prior to Col. Cretella's October 3, 1991 memorandum decentralizing authority over cadet transfer requests, the Army had implemented its transfer policy consistently. From 1989–1991 Army Cadet Command Headquarters approved 39 of 45 transfer requests; all 39 transfers were approved on the condition that the cadet would be responsible for increased tuition costs.

Plaintiff's complaint in federal district court rested on equal protection grounds, equitable estoppel, and contract theory, although plaintiff eventually conceded that the district court was without jurisdiction to hear his contract claim. *Burnett,* slip op. at 1 n. 1. After a trial on the merits, on September 27, 1996, the district court granted the Army judgment on "plaintiff's claim for a declaratory judgment based on theories of an equal protection violation and equitable estoppel arising from defendant's refusal to pay the increased tuition costs," slip op. at 8, and dismissed plaintiff's complaint with prejudice. Plaintiff filed his complaint in the Court of Federal Claims on March 3, 1997. Defendant's motion to dismiss relies on res judicata and collateral estoppel; in the alternative, defendant argues for summary judgment on the merits.

## DISCUSSION

Although material facts are in dispute as to the merits of plaintiff's claims, no factual dispute is present concerning the proceedings before the district court.

■ 1. Defendant grounds its motion to dismiss on the doctrine of res judicata, or claim preclusion. An argument based on res judicata is properly considered as a motion to dismiss pursuant to RCFC 12(b)(4). *See Estate of Akin v. United States,* 31 Fed.Cl. 89, 90 n. 1 (1994); *Gustafson v. United States,* 27 Fed.Cl. 451, 452 n. 1 (1993). In *Federated Department Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981), the Supreme Court explained that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." The United States Court of Claims, predecessor to the Court of Federal Claims, established a four-part test for the application of res judicata: (1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim or cause of action as in the prior decision,

(3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both cases. *Mosca v. United States,* 224 Ct.Cl. 678, 679 (1980). The decision of the district court constitutes a valid and final judgment on the merits, and the parties that are involved in the instant case were involved in the prior case.[5] However, plaintiff asserts that the district court neither heard nor decided his contract claim because the court was without subject matter jurisdiction. Because the second component of the test articulated in *Mosca* is not satisfied, plaintiff contends that res judicata cannot bar his contract claim.

■ Plaintiff's argument is well taken to the extent that the district court's decision did not resolve issues necessarily implicated by plaintiff's present contract claim. The district court opinion states that "[p]laintiff has conceded that his contract claims cannot be heard in this Court." *Burnett,* slip op. at 1 n. 1. Plaintiff argues that this statement is tantamount to an express reservation of plaintiff's right to raise his contract claims in a subsequent proceeding. In *Nevada v. United States,* 463 U.S. 110, 131, 103 S.Ct. 2906, 2919, 77 L.Ed.2d 509 (1983), the Supreme Court recognized that definitions of what constitutes the same claim or cause of action for the purpose of res judicata analysis has not remained static over time. Finding it unnecessary to "parse any minute differences which these differing tests might produce," the Court's inquiry focused on whether the party against whom res judicata was asserted had the opportunity to litigate all of its rights during the prior proceeding. *Id.*

Plaintiff's complaint in the instant case reveals that he relies almost exclusively on the representations of Army personnel intimating that plaintiff could freely transfer to any ROTC school and that the Army would incur 80% of the tuition costs, or $8,000, whichever is greater. Plaintiff's complaint avers:

The representative of the United States Army advised Plaintiff and his father that

---

**5.** Although the Army was the named defendant in the Arkansas district court case, if does not affect the applicability of res judicata between the parties, because a suit against a department of the

Government is considered to be a suit against the United States. *See Bass v. United States,* 11 Cl.Ct. 295, 299 (1986) (citing cases).

Plaintiff could accept the benefits of contract[ing] with the Defendant for the University of Arkansas with the full right of transfer to any other college where a reserve officer training corps was located under the terms and conditions of the contact. The representative of the Defendant assured Plaintiff and his father that such a transfer was permitted even when the transferee college charged a higher rate of tuition. Based upon these material representations, Plaintiff accepted the scholarship and turned down other scholarship offers.

. . . .

5. Before Plaintiff signed [the Contract], he was told by ROTC recruiters that he could freely transfer to any ROTC school and would receive payment of 80% of the tuition costs or $8,000.00, the threshold established by ROTC scholarship information. In reliance upon that promise, Plaintiff refused two other scholarship offers which together paid more than the amount paid by ROTC. Those offers were refused in order to enable Plaintiff to enroll at the University of Arkansas and later transfer to Washington University in St. Louis, Missouri. Representatives of Defendants were aware of these plans and advised Plaintiff that under the policy of Defendants this was permissible and would be paid for.

6. In 1994, Plaintiff requested permission to transfer to Washington University from the University of Arkansas. That request was granted. However, Plaintiff was informed that payment of his tuition at Washington University would be limited to the amount paid to the University of Arkansas, which was approximately $2,000.00. This was contrary to the statements made to Plaintiff by representatives of the Defendants which statements had been relied upon by Plaintiff to his detriment when he signed [the Contract]. This was also contrary to the terms of the contract and the policy of the Defendants.

Compl. filed Mar. 3, 1997, ¶¶ 2, 5–6.

Plaintiff's complaint attempts to resuscitate the equitable estoppel claim dismissed by the district court by infusing elements of detrimental reliance commonly associated with the doctrine of promissory estoppel. Although notions of detrimental reliance have a place in both doctrines, equitable estoppel is available only as a defense, while promissory estoppel can be used as the basis for a cause of action for damages. Promissory estoppel will create a contract in the furtherance of justice and fairness, when no such contract exists in fact. Equitable estoppel does not create a contract, but rather precludes the party against whom the estoppel is raised from asserting certain rights, subsequent to conduct from which one could reasonably infer that such rights would not be asserted. *See Lincoln Logs Ltd. v. Lincoln Pre–Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed.Cir.1992).

The United States " 'has not waived its sovereign immunity with regard to a promissory estoppel cause of action.' " *Biagioli v. United States*, 2 Cl.Ct. 304, 308 (1983) (quoting *Jablon v. United States*, 657 F.2d 1064, 1070 (9th Cir.1981)); *see also R.R. Donnelley & Sons, Co. v. United States*, 38 Fed.Cl. 518, 521 (1997); *Knaub v. United States*, 22 Cl.Ct. 268, 276 (1991); *American Maritime Transp., Inc. v. United States*, 18 Cl.Ct. 283, 292 (1989). The district court's decision expressly determined that no false representation or concealment was perpetrated upon plaintiff and that plaintiff was aware that Army personnel at the University of Arkansas did not have the authority to approve cadet transfers.[6] *See Burnett*, slip op. at 8. Assuming, *arguendo*, that plaintiff did not have the opportunity to litigate certain issues necessary to the success of the present contract claim, the district court was a forum in which plaintiff had every opportunity to litigate any and all claims related to equitable estoppel, promissory estoppel, and equal protection. These claims may not be raised again, even if plaintiff now frames such claims as a "contract" claim. This result ensures " 'finality as to the claim or demand in controversy, [for the] concluding parties

---

**6.** Interestingly, plaintiff's brief in response to defendant's motion to dismiss concedes that "[m]isrepresentation is not the key to [plaintiff's contract] argument.... If misrepresentation were the key ..., the Army's position might be well taken." Plf's Br. filed Dec. 30, 1997, at 10.

..., not only as to every matter which was offered and received to sustain or defeat the claim or demand, but to any other admissible matter which might have been offered for that purpose.'" *Nevada,* 463 U.S. at 129–30, 103 S.Ct. at 2918 (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876)).

2. A claim for breach of contract is not based on the same substantive and procedural legal principles as are claims in equitable estoppel or equal protection; therefore, res judicata will not permit a prior judicial proceeding rendering judgment on the merits of equitable estoppel or equal protection claims to bar a subsequent claim for breach of contract. However, the doctrine of collateral estoppel does come into play. Although similar in theory and practice, res judicata (claim preclusion) stands apart from collateral estoppel, or issue preclusion. Under the latter doctrine, a party may not relitigate a legal or factual issue that was actually decided in a prior suit. *See Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 326–27, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1955). Because plaintiff fails to raise any issues in support of his contract claim that were not litigated in the course of rendering judgment on the equal protection and equitable estoppel claims, collateral estoppel is appropriate in this case.

■ Collateral estoppel will preclude relitigation of an issue when:

(1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded ... was fully represented in the prior action.

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983).

■ Plaintiff asserts that the district court made findings only with respect to the equitable estoppel and constitutional equal protection claims, but "made no findings of fact with respect to the contract claims." Plf's Br. filed Dec. 30, 1997, at 11. Plaintiff focuses on the language of the Contract that states: "Normally, I will not be granted a transfer to a higher-cost school at Army expense." Because other cadets in similar circumstances were treated as plaintiff wishes to be treated, and because the Army did not implement its transfer policy uniformly, in that it failed to apply an objective set of criteria, plaintiff contends that the quoted provision interpreted in conjunction with the term "limited cap provision" should be construed to permit plaintiff to transfer to a higher-cost school at the Army's expense.

Although purporting to advance a new claim supported by unlitigated legal and factual issues, plaintiff fails to recognize that the foundation of the contract claim is supported by nothing more than the facts underlying the equitable estoppel and equal protection claims that were urged unsuccessfully before the district court. Plaintiff's contract claim relies specifically on the following: 1) that the term "limited cap provision" is not defined in the Contract; 2) that the Army permitted cadets in similar circumstances to plaintiff to transfer without paying for increased tuition and fees; 3) that the Army failed to enforce its transfer policy uniformly; and 4) that certain Army representatives informed plaintiff that the Army "likely" would pay $8,000 or 80% of the cost of tuition at Washington University. These are precisely the issues that the district court opinion addressed and on which it made factual findings. Because each of these issues unquestionably satisfies the test articulated in *Mother's Restaurant,* collateral estoppel precludes their relitigation. Although plaintiff contends that these issues are now raised in support of a new claim in the Court of Federal Claims, the success of plaintiff's contract claim is dependent upon the success of the same legal theories (equitable estoppel and equal protection) and same factual and legal issues that were resolved in the prior proceeding. After a thorough review of plaintiff's complaint and brief, the court fails to find any semblance of a claim supported by legal and factual issues not previously considered.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted. The

Clerk of the Court shall enter judgment for defendant dismissing the complaint with prejudice.

**IT IS SO ORDERED.**